UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEVEN LEE CHURCH,

    Petitioner,

v.              Case No. 1:02-cv-231

               Hon. Wendell A. Miles

TERRY PITCHER,

    Respondent.

_____/

OPINION AND ORDER ADOPTING MAGISTRATE JUDGE'S REPORT
AND RECOMMENDATION

  Petitioner Steven Lee Church, a state prisoner currently confined at the Pugsley Correctional Facility, filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner was convicted of second degree murder, MICH. COM. LAWS 750.317, following a jury trial in the Kent County Circuit Court. On June 11, 1997, the trial court sentenced Petitioner to a term of imprisonment of ten to thirty years. The trial court subsequently denied his motion for a new trial. Petitioner appealed to the Michigan Court of Appeals which affirmed his conviction on July 13, 1999.[1] On September 19, 2000, the Michigan Supreme Court denied his delayed application for leave to appeal.[2] On February 1, 2001, Petitioner filed a motion under

---

[1] People v. Church, No. 204627, 1999 WL 33438813 (Mich. App. July 13, 1999).

[2] People v. Church, 463 Mich. 873, 618 N.W.2d 590 (Mich. 2000) (Table). The Michigan Supreme Court initially ordered the Kent County Prosecutor to file an Answer and a brief pertaining to the issue of the "great weight of the evidence." People v. Church, 613 N.W.2d 720 (Mich. 2000) (Table). After considering the material submitted by the prosecuting attorney, the Michigan Supreme Court denied Petitioner's delayed application for leave to appeal.

Michigan Court Rule 6.50 for relief from judgment, which was denied by the trial court. The Michigan Court of Appeals and the Michigan Supreme Court denied his applications for leave to appeal on September 18, 2001 and March 4, 2002 respectively.

Petitioner filed his petition for writ of habeas corpus in this court on April 9, 2002, arguing that he was denied due process because (a) there was insufficient evidence to support his conviction, (b) the verdict was against the great weight of the evidence, (c) the prosecutor improperly commented on petitioner's silence during trial, (d) the prosecutor engaged in repeated and prejudicial misconduct, and (e) his trial and appellate attorney rendered ineffective assistance of counsel (6.5).[3]

## Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2241 et seq., provides: An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

---

[3] Petitioner did not object to the Magistrate Judge's conclusion that his claims were procedurally defaulted. The court may review a procedurally defaulted claim if the petitioner can show cause for the default and actual prejudice as a result of the alleged constitutional violation. Coleman v. Thompson, 501 U.S. 722, 750 (1991), or actual innocence. Bousley v. United States, 523 U.S. 614, 622-23 (1998). A procedurally defaulted ineffective-assistance of counsel claim can serve as cause to excuse the procedural default of another habeas claim if the habeas petitioner can satisfy the "cause and prejudice" standard with respect to the ineffective-assistance claim itself. Edwards v. Carpenter, 529 U.S. 446, 453 (2000). Accordingly, the Magistrate Judge addressed the issue of whether Petitioner's attorney provided ineffective assistance by failing to raise the procedurally defaulted claims on appeal.

established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2241(d).  The AEDPA permits the lower courts to consider only federal law "as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

The writ may issue only if one of the following two conditions is satisfied: the decision of the state court (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Williams v. Taylor, 529 U.S. 362, 412-13 (2000).  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.  Id.

## Background

The victim in this case was a six-month old child.  On October 28, 1996, the victim's mother brought him to Petitioner's house shortly after 9:00 p.m.  When the baby arrived, he was crying.  Petitioner was to provide child care to the victim that night, along with caring for his sister's two children, six and eight-years old.  Petitioner's sister returned to the house at approximately 11:15 p.m. and observed the victim sleeping on the living room floor and

Petitioner sleeping in a recliner in the living room.  She noted that the victim was sleeping and breathing normally. Petitioner's sister went to bed.  At 4:45 a.m., October 29, Petitioner woke his sister stating that the victim was not acting normally.  The sister testified that the victim had one eye open, and when she picked him up he moaned and stiffened.  Petitioner telephoned the victim's grandmother, who took the victim to the hospital at about 6 a.m.  The victim was placed on life support but died at 2:35 p.m., October 30, 1996.

The emergency room doctor testified at trial that when the victim arrived at the hospital, he was not acting normally, and was exhibiting signs of a seizure or brain abnormality.  At 6:20 a.m. on October 29, a pediatrician, Dr. Stoiko, reviewed a CAT scan of the victim's head, and concluded that the victim suffered a severe shaking-type brain injury that could not have been accidental, and that certain areas of the brain appeared to be dead or in the process of dying.  Dr. Stoiko testified that the victim likely received the injuries in the early morning hours of October 29, and that, in his opinion, it was not possible that the injuries were sustained before 9:00 p.m. the previous day.

Petitioner points to testimony that the victim was sick and vomiting before his mother brought him to Petitioner's residence.  There was also testimony that the victim's mother often slapped him and threw him, sometimes as high as the ceiling, and the victim had a nose injury several weeks earlier.  The autopsy revealed a subdural hemorrhage that was 5-10 days old, injuries to the top portion of the victim's head, and a cut frenumum (skin holding the upper lip to the gum).

## Ineffective assistance of counsel

Petitioner was represented at trial and before the Michigan Court of Appeals by the same

attorney. To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate (1) that his counsel's performance fell below an objective standard of reasonableness according to prevailing professional norms, Strickland v. Washington, 466 U.S. 668, 688 (1984), and (2) prejudice, meaning a reasonable probability that the outcome would have been different absent the deficient performance. Id. at 694. In undertaking an effective assistance review, there is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. Id. at 689; Groseclose v. Bell, 130 F. 3d 1161, 1167 (6th Cir. 1997).

A. Sufficiency and great weight of the evidence

Petitioner contends that his appellate counsel provided ineffective assistance by failing to argue on appeal that the verdict was against the great weight of the evidence and unsupported by sufficient evidence. The Magistrate Judge concluded that Petitioner's contention was without merit. Petitioner now argues that there was abundant evidence presented at trial that the victim's mother actually caused the victim's injury and death, and only circumstantial evidence supported a conclusion that Petitioner committed the crime.

A federal habeas court has no power to grant habeas relief on the ground that a state conviction is against the great weight of the evidence. Cameron v. Birkett, 348 F. Supp. 2d 825, 838 (E.D. Mich. 2004); Young v. Kemp, 760 F.2d 1097, 1105 (11th Cir.1985); Thomas v. McLemore, 2001 WL 561216, *5 (E.D. Mich. March 30, 2001). A claim that a verdict went against the great weight of the evidence is not of constitutional dimension for habeas corpus purposes unless the record is so devoid of evidentiary support that a due process issue is raised. Cukaj v. Warren, 305 F. Supp. 2d 789, 796 (E.D. Mich. 2004). The test for federal habeas relief

5

is not whether the verdict is against the great weight of the evidence, but whether there is sufficient evidence to support it. Dell v. Straub, 194 F. Supp. 2d 629, 648 (E.D. Mich. 2002). The only question is whether the evidence was constitutionally sufficient to prove all of the elements of the offense for which the petitioner was convicted. Cameron, 348 F. Supp. 2d at 838.

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In Re Winship, 397 U.S. 358, 364 (1970). In Jackson v. Virginia, 443 U.S. 307 (1979), the United States Supreme Court established that a federal court's review of a sufficiency of the evidence claim must focus on whether "after reviewing the evidence in the light most favorable to the prosecution any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319; United States v. Sykes, 292 F.3d 495, 498-99 (6th Cir. 2002). The Jackson standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." Jackson, 443 U.S. at 324 n.16. The Jackson standard applies whether the evidence of guilt was direct or circumstantial. Scott v. Elo, 302 F.3d 598, 602 (6th Cir. 2002). Moreover, it is not necessary that the evidence rules out all other interpretations of the evidence except the defendant's guilt. Jackson, 433 U.S. at 326; Holland v. United States, 348 U.S. 121, 140 (1954); United States v. Beddow, 957 F.2d 1330, 1334 (1992). Finally, the court must not reweigh the evidence or redetermine the credibility of witnesses whose demeanor has been observed by the finders of fact. Marshall v. Lonberger, 459 U.S. 422, 434 (1983); United States v. Jackson, 55 F.3d 1219, 1225 (6th Cir. 1995) (federal court does not substitute its opinion as to the weight of the evidence or credibility of the witnesses).

An assessment of the credibility of witnesses is beyond the scope of federal habeas review of sufficiency of the evidence claims.  Gall v. Parker, 231 F.3d 265, 286 (6th Cir. 2000).  A federal court must presume that the factfinder's findings in evaluating the credibility of witnesses are correct and may ignore the testimony only when it finds it to be "inherently incredible."  Malcum v. Burt, 276 F. Supp. 2d 664, 686 (E.D. Mich. 2003); United States v. Bailey, 444 U.S. 394, 414-15 (1980) ("It is for [jurors] and not for appellate courts to say that a particular witness spoke the truth or fabricated a cock-and-bull story").

     The felony underlying Petitioner's conviction is based on an incident of child abuse, or more specifically "shaken baby" syndrome.  To convict a defendant of second degree murder under Michigan law, the prosecution must establish each of the following elements: (1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse.  MICH. COMP. LAWS 750.317; People v. Maynor, 256 Mich. App. 238, 244 (2004).  To prove malice, the prosecution must demonstrate that the defendant had the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm.  People v. Goecke, 457 Mich. 442, 464 (1998).

     The pediatrician, Dr. Stoika, testified that the victim's injury was not typical of an accident.  Thus, there was evidence that the person who shook the victim did so with malice and without justification or excuse. The crucial question was which person shook the child and caused the fatal injury.  Petitioner's sister testified that the victim was sleeping and breathing normally at 11:00 p.m.   The pediatrician testified that is was not possible for the victim's injuries to have occurred prior to the time he was left at Petitioner's home.  He specifically

7

testified, "I don't think [the victim] would have survived until 6:00 in the morning if he had received this severe brain injury the night before without medical care." (Trial Tr. IV at 182). While there was evidence that arguably could support a conclusion that the victim's fatal injury was inflicted before he arrived at Petitioner's home, given the deference to be accorded to the jury's resolution of disputed factual issues, it is clear that there was sufficient evidence from which a rational trier of fact could have found beyond a reasonable doubt that the injury occurred while the victim was in Petitioner's care, and by Petitioner's actions. Accordingly, the Magistrate Judge correctly found that Petitioner's appellate counsel was not constitutionally ineffective for failing to raise sufficiency of the evidence as an issue on appeal.

B.  Prosecutorial Misconduct

Petitioner argues that the prosecutor (1) misstated facts to Dr. Junewick, (2) wrongfully commented on the fact that Petitioner did not testify during trial, (3) misstated Dr. Cohle's testimony, (4) compared Petitioner to an infamous person, and (5) wrongfully evoked juror sympathy for the victim's family. In evaluating a claim of prosecutorial misconduct as a violation of the petitioner's due process right to a fair trial, the inquiry is whether the prosecutor's conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986), quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974). "Even if the prosecutor's conduct was improper or even universally condemned, we can provide relief only if the statements were so flagrant as to render the entire trial fundamentally unfair." Bowling v. Parker, 344 F. 3d 487, 512 (6th Cir. 2003). Reversal is required only if the prosecutor's misconduct is "so pronounced and persistent that it permeates the entire atmosphere of the trial or so gross as probably to prejudice the defendant." Pritchett v.

8

Pitcher, 117 F. 3d 959, 964 (6th Cir. 1997). The Magistrate Judge concluded that the prosecutor's statements, singularly or in combination, did not constitute prosecutorial misconduct.

First, the prosecutor incorrectly stated to Dr. Junewick that the CAT scan was performed approximately 24 hours after it had actually been performed. However, Dr. Junewick testified that he could only determine that the victim's injury had occurred zero to seven days prior to the CAT scan. The time frame would be consistent with either Petitioner's contention that the victim sustained his injury before he was left with Petitioner, or sustained the injury while in Petitioner's care. Moreover, the jury heard Dr. Stoiko's testimony that he reviewed the results of the CAT scan at 6:30 in the morning of the day the victim had been brought to the hospital, which considered in conjunction with Dr. Junewick's testimony, would make it possible for the injury to have occurred before the victim was placed in Petitioner's care. Thus, the prosecutor's misstatement did not render the trial fundamentally unfair.

Second, during closing argument the prosecutor stated with regard to the element of intent:

> You've heard no evidence that in this case at all that the person who did this didn't do it with the intent – nobody got up there and said that the defendant didn't mean to do it . . . I don't think any of this is contested at all. I think this is proven well beyond a reasonable doubt based on the evidence that you have before you. There is no evidence to the contrary.

It is well established that the prosecution must not comment on a defendant's decision not to testify at trial. Griffin v. California, 380 U.S. 609, 615 (1965). Prosecutors may, however, "summarize the evidence and comment on its quantitative and qualitative significance." United States v. Bond, 22 F. 3d 662, 669 (6th Cir. 1994). The Magistrate Judge set forth the test to use

9

when a prosecutor's remark indirectly comments on a defendant's decision not to testify: "(1) were the comments 'manifestly intended' to reflect on the accused's silence *or* of such a character that the jury would 'naturally and necessarily' take them as such; (2) were the remarks isolated or extensive; (3) was the evidence of guilt otherwise overwhelming; (4) what curative instructions were given and when." Lent v. Wells, 861 F. 2d 972, 975 (1988). The prosecutor's remarks were made in the context of summarizing the evidence during closing argument, with the likely intention of showing the jury that the prosecution had proven the intent element rather than to focus the jury's attention on the fact of defendant's silence. See Lent v. Wells, 861 F.2d 972, 975 (6th Cir.1988) (stating that there can be no constitutional error if "some other explanation for the prosecutor's remarks is equally plausible"). Moreover, the court instructed the jury that they could not consider the fact that Petitioner did not testify.

Third, Petitioner claims that the prosecutor misstated Dr. Cohle's testimony. The prosecutor told the jury to determine the time the fatal injury was sustained by subtracting 36 hours from the time of the victim's death, which, she argued, was consistent with Dr. Cohle's testimony. Using that formula, Petitioner was in exclusive control of the victim when he sustained the fatal injury. Dr. Cohle testified that the fatal injury occurred "within 36 hours of the child's death, roughly," or "approximately 36 hours before he died." He also testified that, "I think the child survived approximately 36 hours after having an episode of severe brain swelling." Petitioner contends that it could be three to four hours after an injury before swelling begins, which would make the time of the fatal injury 39-40 hours before death. Even if Petitioner's assertion regarding the possible time between the injury and the swelling is correct, that was not Dr. Cohle's testimony. Accordingly, the prosecutor did not misstate Dr. Cohle's

10

testimony.  Moreover, the jury would have heard any medical testimony that was incompatible with Dr. Cohle's testimony, weighed the credibility of the respective witnesses, and made their assessment accordingly.

Fourth, Petitioner argues that the prosecutor's remark comparing him to Susan Smith, a woman convicted of murdering her two children was prejudicial.  During closing argument, the prosecutor referred to Susan Smith as a person who appeared to be a good mother, but yet murdered her children.  In Dardin v. Wainwright, 477 U.S. 168 (1986), the Supreme Court held that a prosecutor's references in closing argument to the petitioner being an "animal" that needed a "leash" did not render the petitioner's trial fundamentally unfair.  The Supreme Court stressed that the prosecutor's argument "did not manipulate or misstate the evidence, nor did it implicate other specific rights of the accused such as the right to counsel or the right to remain silent."  Id. The Supreme Court's reasoning is equally applicable to the Susan Smith reference in this case.

Finally, Petitioner contends that the prosecutor wrongfully attempted to invoke sympathy for the victim and the victim's family.  However, as the Magistrate Judge noted, defense counsel asked the jurors to put themselves in Petitioner's place.  The prosecutor responded during closing argument that the jury should find Petitioner guilty for the sake of the victim and the victim's mother, or in other words, put themselves in the victim's place.  The prosecution "is ordinarily entitled to wide latitude in rebuttal argument and may fairly respond to arguments made by defense counsel."  Beam v. Foltz, 832 F. 2d 1401,1407 (6th Cir. 1987), citing Donnelly v. DeChristoforo, 416 U.S. 637 (1974); Angel v. Overberg, 682 F. 2d 605, 607-08 (6th Cir. 1982). If the prosecutor's remarks were "invited," and did no more than respond substantially in order to "right the scale," the comments would not warrant reversing a conviction.  Donnelly, 416 U.S. at

11

1045. Here, the prosecutor's statement in response may have evoked some sympathy for the victim, but the comment was brief and not particularly inflammatory.

Petitioner has not established error or harm based on prosecutorial misconduct, therefore, his argument that the cumulative effect of such misconduct renders his trial fundamentally unfair is without merit.

Because Petitioner has not shown that he received ineffective assistance of counsel by his counsel's failure to raise the procedurally defaulted claims on direct appeal that he raises here, he is not entitled to federal habeas relief on the grounds of ineffective assistance of counsel.

## Conclusion

The court has read the Magistrate Judge's Report and Recommendation and conducted an independent review of the record. For the reasons discussed above, the court finds that the Magistrate Judge's findings and recommendation are correct. Accordingly, for the reasons discussed above, the court OVERRULES the Petitioner's Objections (Dkt. #47), ADOPTS the Magistrate Judge's Report and Recommendation (Dkt. #39 ); and DENIES the petition for writ of habeas corpus.

So ordered this 7th day of March, 2006.

   /s/ Wendell A. Miles
Wendell A. Miles
Senior U.S. District Judge